JUDGE PETERS
delivered the opinion oe the court.
To an action brought by appellant against appellee and one Dillingham on two notes, bearing date the 2d day of September, 1865, Young, after stating in an answer to an amended petition that the larger note was given for money loaned by appellant to Dillingham, and that the smaller one was for usurious interest demanded for the use of the money loaned, and that he signed both of the notes as the surety only of Dillingham, alleges that the notes do not bear the true date of their execution, but that they were, in fact, executed on the 3d day of September, 1865, which was the Christian Sabbath or Lord’s-day, and that appellant purposely placed the wrong date to them to avoid the consequence of transacting the business on the Lord’s-day; but that the money was loaned, notes executed, and the whole business completed on the Christian Sabbath; that neither appellant nor the obligors in said notes were at the time members of any religious society who observed or kept as a day of rest any other day of the week except the Christian Sabbath; and that he had not at any day or time since their execution ratified or promised to pay the notes, and insists that he is under no legal obligation to pay the same.
Dillingham pleaded his discharge in bankruptcy, and the action was dismissed as to him; and on the trial of the cause between Campbell and Young a verdict was found for the defendant Young; and Campbell’s motion for a new trial having been overruled, and judgment having been rendered in conformity to the verdict, this appeal is prosecuted to reverse that judgment.
It is satisfactorily established by the evidence that the contract for the loan of the money was made on Sunday or the Lord’s-day, and the notes were made and delivered that day, a part of the money handed to Dillingham then, and appellant drew and signed a check, payable to Dillingham, and *242 delivered it to him, on the Bank of Lebanon for five hundred and thirty dollars, making the balance of the sum loaned, which was presented to the bank on the Wednesday following by Osborn Dillingham, the son of the payee, and the money drawn on it.
After the evidence was closed the court charged the jury as follows: If they believe from the evidence that the notes sued on were executed by defendants and delivered to plaintiff on Sunday, the Christian Sabbath, and that .the money or a check therefor was delivered on the same day, and there was nothing else to be done to complete the transaction between the parties after that day, they ought to find for the defendant Young.
To the ruling of the court in submitting that as the law of the case to the jury the appellant excepted, and upon the correctness of that as a legal principle the fate of this appeal depends.
This instruction is based on sec. 11, art. 17, chapter 28, 1 R. S. 400, the first sentence of which reads as follows: “ No work or business shall be done or performed on the Sabbath-day,. unless the ordinary household offices of necessity, or other work of necessity or charity; ” and for every violation of the statute a fine of two dollars is imposed.
The effect of this statutory prohibition on contracts entered into on the Sabbath-day has been several times before this court for adjudication. The first case is that of Ray, &c. v. Catlett & Buck (12 B. M. 533), in which it is said, “We are not prepared to decide that the mere execution and delivery of a note or its mere acceptance on Sunday is laboring in any trade or calling, unless it be a part of some other transaction done also on Sunday, which may be regarded as labor in some trade and calling. And if the mere execution and delivery of a note could be deemed such labor, we are satisfied its mere acceptance could not, and the person accepting would not be *243 involved in any consequence of a breach of the law by the other, unless he knew that the note had been made as well as delivered on Sunday.”
And the judgment of the court below for the amount of the note sued on, although shown to have been executed on Sunday, was affirmed.
In Murphy v. Simpson (14 B. M. 337) the parties traded or swapped horses on the Sabbath; the whole transaction was completed on that day, and afterward one of the party brought an 'action against the other for a breach of warranty of soundness. The defendant pleaded that the contract sued on was made on the Christian Sabbath; that neither the plaintiff nor defendant were members of any religious society that observed as a Sabbath any other day in the week than Sunday, or the Christian Sabbath. The circuit court decided that the defense was insufficient, and the plaintiff recovered a judgment for forty dollars, from which the defendant appealed, and this court reversed the judgment. The court said that exchanging or, as it is usually termed, swapping horses is as much a trade or business as selling a horse or any other commodity would be. It is a violation of the statute when done on the Sabbath-day. The act is illegal, and consequently no contract arising out of it is enforceable.
The statute should not be extended by construction to embrace cases which are not clearly within its obvious meaning; but at the same time it should be fairly construed, with a view to the accomplishment of the objects contemplated by the legislature in its enactment. In this ease nothing in relation to the trade was left undone, but the whole business was ended on the Sabbath.
In Vermont, where they have a statute on the subject very similar to ours, the question as to the effect of contracts made on the Lord’s-day was very thoroughly considered, and an exhaustive opinion delivered by Judge Redfield in Adams v. Gay *244 (19 Vermont), and indorsed by Washburn (vol. 6). The court say, “ The contract is held to be void upon the familiar principle that all contracts made in contravention of an express statute, whether the sanctions of the statute are enforced by a penalty or not, are void.”
The contract being void, it follows of course that so long as the matter remains in that state no action can be maintained, either upon the contract, or for any thing done under it or growing out of it; so that in the present case the plaintiff could not in the first instance, and upon general principles, have maintained any action for the recovery of his own horse, or to recover damages for the fraud or false warranty of the defendant. This certainly is the general rule in regard to contracts which are void for illegality.
But to this general rule there are many exceptions; and these exceptions are framed mainly by judicial construction, and are founded upon some superior policy to that general policy which dictated the rule.
And it seems to the court that in the class of contracts now under consideration there is a most urgent necessity so to administer this rule in regard to them that it shall not be in the power of the reckless and irreligious to circumvent and defraud the unwary under the guise of the sacredness of the time when their own injustice was perpetrated.
We have little doubt such practices have already been attempted in some cases, and it might become a not unfrequent resort of those who desired to effectually cut off all remedy for their own fraud and dishonesty. If the general principle of holding contracts made on Sunday void is also to shield the contracting parties from the consequences of their frauds, and to allow the dishonest and abandoned to retain whatever they may be able to get possession of under such contracts, and at the same time release them from all liability on their own contracts, then the rule itself will be productive *245 of infinite mischief, and should be discarded at once. But with such qualifications as the English courts have already hinted at we think the rule a safe one.
We think contracts made upon Sunday should be held an exception, in some sense, from the general class of contracts which are void for illegality. Such contracts are not tainted with any general illegality; they are illegal only as to the time in which they are entered into. When purged of this ingredient they are like other contracts. Contracts of this kind are not void because they have grown out of a transaction upon Sunday. This is not sufficient to avoid them; they must be finally closed upon that day; and although closed upon that day, yet if affirmed upon a subsequent day they become valid. (Williams v. Paul, 6 Bingham 653.)
The same principle is distinctly recognized also in Bloxsome v. Williams. And if it is competent to affirm a contract of this kind upon some other day, it follows that there must be a very essential difference between such contracts and most other illegal contracts, which can never be so affirmed as to bind the parties. But we would choose not to leave it to the election of either party to disaffirm such a contract at will, for this also might lead to abuses. But in those cases where the contract remains executory upon both sides, and was made on Sunday, it is simply void until subsequently affirmed by mutual consent. Where either party has done any thing under such a contract for which, of course, he would have no remedy under the contract until it was subsequently affirmed, he may demand restitution, and where it is not, compensation; and thus he will put the other party to his election whether to affirm or disaffirm the contract. If he decline to make restitution, or when that is impracticable compensation, this is in fact affirming the contract, and should be so held.
In the present case the contract was not fully executed on Sunday. Five hundred and thirty dollars were to be collected *246 on a future day. For that a check was given on a bank in Lebanon, which was presented on the Wednesday following, and the money received on it from the bank.
By collecting the money on this check and retaining it, and also that which had been advanced on the Sunday previous, the parties reaffirmed the contract. But it is said that Young was only the surety of Dillingham in the note, and was not a party to the reaffirmance. From the testimony in the case it appears that appellee took an active part in getting the money from appellant; informed him at the time that most of the money to pay him he, as administrator of Jones, owed to Dillingham, and would be realized through him; and by failing to disaffirm the contract, but acquiescing in the presentation of the check on the bank in Lebanon, and the collection of the money on it, and consenting to Dillingham’s retaining the money he got on Sunday, and he must be regarded as having affirmed the contract, and must be bound by the consequences of his own acts.
Wherefore the judgment is reversed, and the cause is remanded with directions to award a new trial and for other proceedings consistent with this opinion.